**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT NJOS, | : | CIVIL NO. 3:14-CV-1960 |
| | : | |
| Plaintiff, | : | (Judge Kosik) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[1]

### I.    Statement of Facts and of the Case.

Scott Njos is a federal inmate housed at the United States Penitentiary, Lewisburg, where he is currently serving an 188-month sentence following his conviction on bank robbery, Hobbs Act robbery, escape, and assault on a federal officer charges. While in federal custody, Njos has amassed an extensive disciplinary history, having been cited on dozens of occasions with prison rules infractions, many of which involved violent or disruptive behavior by Njos in an institutional setting. This history of recidivism and on-going institutional misconduct led to the

---

[1]The parties are advised that, pursuant to 28 U.S.C. § 636, the district court has orally referred the above-captioned case to the undersigned for pre-trial management, resolution of non-dispositive motions, and preparation of reports and recommendations on potentially dispositive matters.

reassignment of Njos to the Special Management Unit of the United States Penitentiary, Lewisburg, where the plaintiff currently resides.

Njos is also a prolific litigator in federal court.[2] Much of this litigation involves Njos' recurring complaint regarding the medical care and treatment which he receives at the Lewisburg Penitentiary. The instant case is but one example of this growing body of litigation brought by Njos. In the instant case, Njos has sued the United States and prison mental health providers, alleging that the defendants violated his constitutional rights, and acted negligently, by not providing him with individual out of cell psychological care. According to Njos, he is now entitled to select the manner of his care because he claims to have been raped by another inmate at a different institution on October 3, 2010, and, therefore, should be provided individual therapy in a private setting as a result of that incident.

Along with this complaint, Njos has also filed a motion for preliminary injunction, (Doc. 14.), which seeks far-reaching equitable relief. Specifically, Njos is requesting that this Court issue an Order to "Lewisburg Psychology Services to provide a Psychiatry Consult evaluation by a Psychiatrist via Tele-Psych services; a

---

[2]See e.g., Njos v. Bledsoe, 3:12-CV-243; Njos v. Bledsoe, 3:12-CV-476; Njos v. Thomas, 3:13-CV-2721; Njos v. Thomas, 3:13-CV-2816; Njos v. Thomas, 3:14-CV-766; Njos v. Bureau of Prisons, 3:12-CV-1251; Njos v. Kane, 3:12-CV-1252; Njos v. Carney, 3:12-CV-1375; Njos v. United States, 3:15-CV-1960; Njos v. Thomas, 3:14-CV-875.

transfer to Allenwood-USP Special Housing Unit; and order a temporary restraining order restraining psychologists Jessica Sage; Heather Ramirez; and Rachel Eigerbrode from speaking, evaluating or reviewing any records, anytime whatsoever that involve plaintiff. And Order Njos allowed to rec alone with his celly only." (Id.) Thus, Njos would have us order a broad array of parties to allow the plaintiff to choose his prison, his recreation programs, his health care providers, and his treatment options. The defendants have filed a response in opposition to this motion. (Doc. 22.) Therefore, this motion is now ripe for resolution.

For the reasons set forth below, it is recommended that this motion be denied.

## II. Discussion

### A. Preliminary Injunction Rule 65– The Legal Standard

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party;

and (4) whether granting the preliminary relief will be in the public interest." <u>Gerardi v. Pelullo</u>, 16 F.3d 1363, 1373 (3d Cir. 1994) (<u>quoting SI Handling Systems, Inc. v. Heisley</u>, 753 F.2d 1244, 1254 (3d Cir. 1985)).  <u>See also</u> <u>Highmark, Inc. v. UPMC Health Plan, Inc.</u>, 276 F.3d 160, 170-71 (3d Cir. 2001); <u>Emile v. SCI-Pittsburgh</u>, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right.  <u>Kerschner v. Mazurkewicz</u>, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials).  It is an extraordinary remedy.  Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.  As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' "  <u>Emile</u>, 2006 WL 2773261, at * 6 (<u>quoting Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F .2d 86, 91 (3d Cir.1992)).  Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis deleted).  Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." <u>Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53</u>, 520 F.2d

> 1220, 1230 (6th Cir.1975), <u>cert. denied</u>, 428 U.S. 909 (1977). As a
> corollary to the principle that preliminary injunctions should issue only
> in a clear and plain case, the Court of Appeals for the Third Circuit has
> observed that "upon an application for a preliminary injunction to doubt
> is to deny." <u>Madison Square Garden Corp. v. Braddock</u>, 90 F.2d 924,
> 927 (3d Cir.1937).

> <u>Emile</u>, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a

preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable

likelihood of success on the merits, and that he will be irreparably harmed if the

requested relief is not granted. <u>Abu-Jamal v. Price</u>, 154 F.3d 128, 133 (3d Cir. 1998);

<u>Kershner</u>, 670 F.2d at 443. If the movant fails to carry this burden on either of these

elements, the motion should be denied since a party seeking such relief must

"demonstrate *both* a likelihood of success on the merits and the probability of

irreparable harm if relief is not granted." <u>Hohe v. Casey</u>, 868 F.2d 69, 72 (3d Cir.

1989)(emphasis in original), (<u>quoting Morton v. Beyer</u>, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional

context are further underscored by statute. Specifically, 18 U.S.C. §3626 limits the

authority of courts to enjoin the exercise of discretion by prison officials, and provides

that:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where an inmate: (1) seeks to enjoin a wide array of non-parties; and (2) requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Each

of these aspects of the plaintiff's prayer for injunctive relief presents separate problems and concerns.

For example, an injunction against non-parties, like the injunction sought here, requires a specific legal showing. To the extent that the plaintiff seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996).

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995).

In addition, to the extent that the plaintiff seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial

of this extraordinary relief. With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4 .

Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the inmate-"plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . complaint, . . . [the] plaintiff cannot demonstrate that [s]he will suffer irreparable harm

if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this court, upon consideration of defendants' motion to dismiss, or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

In assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

In the past, inmates have frequently sought preliminary injunctive relief compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit. Yet, such, requests, while often made, are rarely embraced by the courts. Instead, courts have routinely held that prisoner-plaintiffs are not entitled to use a motion for preliminary injunction as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits. See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa. Oct. 7, 2008)(denying inmate preliminary injunction); Emile

v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (denying inmate preliminary injunction).  In particular, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for inmates.  In such instances, courts have typically declined such requests citing the inmate's failure to either demonstrate irreparable harm; Rivera v. Pennsylvania Dep't. Of Corrections, 346 F.App'x 749 (3d Cir. 2009), Rush v. Correctional Medical Services, Inc., 287 F.App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits.  Quinn v. Palakovich, 204 F.App'x 116 (3d Cir. 2006).

> **B.** **Njos Has Not Shown That He Is Entitled to the Injunctive Relief He Seeks In His Motion**

> **1.** **Njos Has Not Shown A Likelihood of Success on the Merits**

In this case our review of the plaintiff's motion for preliminary injunction leads us to conclude that this inmate  has not made the demanding showing required by Rule 65 for this extraordinary form of relief.  At the outset, we find that Njos has not yet met his threshold obligation of showing  reasonable probability of success on the merits. With respect to the issue of the plaintiff's ultimate likelihood of success on the merits of this case, we begin by observing that gravamen of this complaint is that prison

officials have violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs. Njos faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, the plaintiff must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id.</u> "Deliberate indifference" is a subjective standard under <u>Farmer</u>-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

<u>Beers-Capitol v. Whetzel</u>,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. <u>See</u> <u>Jones v. Beard</u>, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine

whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, the plaintiff is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant

pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15,

-13-

2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See <u>Taylor v. Norris</u>, 36 F. App'x 228, 229 (8th Cir. 2002); <u>Abdul-Wadood v.</u>

Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

These guiding principles, which determine the ultimate merits of inmate Eighth Amendment claims, also frequently define the availability of preliminary injunctive relief in such cases. Inmates have in the past often invited federal courts to entertain

preliminary injunctions directing their jailers to provide them with specially tailored treatment protocols.  Yet, these requests, while frequently made, have rarely been embraced by the courts in recognition of the exacting burden of proof which must be satisfied to succeed on such an Eighth Amendment claim.  <u>Rivera v. Pennsylvania Dep't. Of Corrections</u>, 346 F.App'x 749 (3d Cir. 2009); <u>Rush v. Correctional Medical Services, Inc</u>., 287 F.App'x 142 (3d Cir. 2008); <u>Quinn v. Palakovich</u>, 204 F.App'x 116 (3d Cir. 2006).

In this case, the defendants have responded to this motion for preliminary injunction by providing detailed information regarding the care and treatment provided to the plaintiff.  Given the evidence submitted by the defendants, it appears that much of the plaintiff's argument in support of his motion for preliminary injunction amounts to little more than a disagreement between an inmate and doctors over alternate treatment plans, which, as a matter of law, fails as a constitutional claim.  <u>See, e.g.</u>, <u>Gause v. Diguglielmo</u>, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); <u>Innis v. Wilson</u>, 334 F.App'x 454 (3d Cir. 2009)(same); <u>Rozzelle v. Rossi</u>, 307 F.App'x 640 (3d Cir. 2008)(same); <u>Whooten v. Bussanich</u>, 248 F.App'x 324 (3d Cir. 2007)(same); <u>Ascenzi v. Diaz</u>, 247 F.App'x 390 (3d Cir. 2007)(same).

Furthermore, to the extent that the plaintiff seeks a prison transfer in this motion for preliminary injunction this motion fails because it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta). In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427

U.S. at 242; <u>Bulger v. U.S. Bureau of Prisons</u>, 65 F.3d 48 (5thCir. 1995); <u>Marchesani v. McCune</u>, 531 F.2d 459 (10th Cir.), <u>cert.denied</u>, 429 U.S. 846 (1976).

Simply put, as a legal matter Njos has no constitutional right to choose his prison, or dictate the specific terms of his health care. Therefore, he may not use a motion for preliminary injunction as a vehicle to choose his place of confinement, his treatment options and providers, or direct a prison transfer.

## 2. <u>Njos Has Not Shown Irreparable Harm</u>

Furthermore, while we do not in any way diminish Njos' complaints regarding a series of health issues, we also find–as many other courts have found when presented with similar complaints–that this inmate has not shown an immediate irreparable harm justifying a preliminary injunction. <u>See e.g.</u>, <u>Rivera v. Pennsylvania Dep't. Of Corrections</u>, 346 F.App'x 749 (3d Cir. 2009); <u>Rush v. Correctional Medical Services, Inc.</u>, 287 F.App'x 142 (3d Cir. 2008). In this regard, when considering the second benchmark standard for a preliminary injunction, whether the movant will be irreparably injured by denial of the relief, in this context it is clear that:

> Irreparable injury is established by showing that plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. <u>Hohe v. Casey</u>, 868 F.2d 69, 72 (3d Cir.),

-18-

cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4 .

Therefore, where an inmate-plaintiff is alleging that damages may be an adequate remedy, a preliminary injunction often is not appropriate since the inmate has not shown that he faces immediate, *irreparable* harm. Rivera v. Pennsylvania Dep't. Of Corrections, 346 F.App'x 749 (3d Cir. 2009); Rush v. Correctional Medical Services, Inc., 287 F.App'x 142 (3d Cir. 2008). Morever, applying these legal standards in a case such as this, where the inmate-"[p]laintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in his . . . complaint, . . . [the] plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this court, upon consideration of

defendants' motion to dismiss, or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

In this case, as we view it, the gravamen of Njos' claims on the merits are identical to the claims in his motion for preliminary injunction. Moreover that complaint, and motion, both assert that the plaintiff can be adequately compensated for any injury he has suffered through a damages award. Since the ultimate issues in this lawsuit are factually bound up with the assertions in this motion for preliminary injunction, and Njos asserts that he can be compensated for these injuries through a damages award, a ruling on this motion might be perceived as speaking in some way to the ultimate issues in this case. In such instances we are cautioned to refrain from prematurely granting such relief where the evidence is still unclear and developing.

### 3.    Njos Is Not Entitled to Enjoin Non-Parties

Furthermore, in this motion Njos seeks to enjoin numerous individuals who are not parties to the instant lawsuit. This effort, in turn, runs afoul of the:

> "[G]eneral rule that a court may not enter an injunction against a person who has not been made a party to the case before it." Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 96 F.3d 1390, 1394 (Fed.Cir.1996) (citing Scott v. Donald, 165 U.S. 107, 117, 17 S.Ct. 262, 41 L.Ed. 648 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit.")). Indeed, courts have refused to issue injunctions against non-parties. See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC, 523 F.Supp.2d 328, 334–35

(S.D.N.Y.2007) (the court denied the defendant's motion for a preliminary injunction against the Federal Energy Regulatory Commission because it was not a party to the suit and it was not an "officer, agent, servant, employee, or attorney" of any party); Williams v. Platt, Civ. no. 03–281–C, 2006 WL 149024 at *2 (W.D.Okla. Jan.18, 2006) (unpublished) (the court denied the plaintiff's motion for an injunction noting that he had "not established a relationship between the preliminary injunction and the underlying civil rights claim, and he seeks to bind non-parties without any suggestion of active concert or participation by the named defendants"). Moreover, once a court has issued an injunction against a party, that injunction may only be enforced against non-parties that are officers, agents, servants, employees, or attorneys of a party, or ones that are in active concert or participation with such non-parties or the party itself. Fed.R.Civ.P. 65(d)(2). To be bound by an injunction, a "non-party must have constructively had his day in court." Harris County, Tex. v. CarMax Auto Superstores Inc., 177 F.3d 306, 314 (5th Cir.1999) ("the relevant inquiry is ... whether [the non-party] had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction.") (citation omitted) (emphasis in original).

Banks v. Good, CA 06-253, 2011 WL 2437061 (W.D. Pa. Apr. 20, 2011) report and recommendation adopted, CA 06-253, 2011 WL 2418699 (W.D. Pa. June 14, 2011).

To the extent that the plaintiff seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996). Njos has not made that showing here. Accordingly, this motion should be denied.

### 4. Other Interests Would Be Adversely Affected By Granting this Motion

Finally, we note that granting this preliminary injunction, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the course of treatment for a single prisoner, could harm both the defendants' and the public's interest. In this prison context, the defendants' interests and the public's interest in penological order could be adversely effected if the court began dictating the treatment protocols and priorities for the plaintiff, one inmate out of thousands treated in the federal prison system.

Moreover, granting a preliminary injunction to Njos could have one other potentially grave and wholly unintended consequence for third parties. Any priority given to the plaintiff's care by judicial fiat would likely have to come at the expense of deferring or delaying care and treatment for some other ill inmate. This court should refrain from making medical choices in a vacuum, medical choices which may affect access to health care for other prisoners who are not parties to this litigation.

Because Njos has not carried his burden of proving either a reasonable probability of ultimate success on the merits, or immediate and irreparable harm, and because granting the injunction could adversely effect the defendants' and the public's interests, this request for a preliminary injunction should be denied.

## III.   Recommendation

Accordingly, for the foregoing reasons, upon consideration of the motion for preliminary injunction, (Doc. 14.) IT IS RECOMMENDED that the motion be DENIED.  The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2d day of September 2015.


*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge