**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SCOTT NJOS,** | : | **CIVIL NO. 3:14-CV-1960** |
| | : | |
| **Plaintiff,** | : | **(Judge Kosik)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |

## AMENDED[1] REPORT AND RECOMMENDATION[2]

### I.    Statement of Facts and of the Case

Scott Njos is a federal inmate housed at the United States Penitentiary, Lewisburg, where he is currently serving an 170-month sentence following his conviction on bank robbery, Hobbs Act robbery, escape, and assault on a federal officer charges. While in federal custody, Njos has amassed an extensive disciplinary history, having been cited on dozens of occasions with prison rules infractions, many

---

[1]We have amended this Report and Recommendation to address the plaintiff's pendent state law claim for intentional infliction of emotional distress. See pages 44-47, *infra.*

[2]The parties are advised that, pursuant to 28 U.S.C. § 636, the district court has orally referred the above-captioned case to the undersigned for pre-trial management, resolution of non-dispositive motions, and preparation of reports and recommendations on potentially dispositive matters.

of which involved violent or disruptive behavior by Njos in an institutional setting. This history of recidivism and on-going institutional misconduct led to the reassignment of Njos to the Special Management Unit of the United States Penitentiary, Lewisburg, where the plaintiff currently resides.

Njos is also a prolific litigator in federal court.[3] Much of this litigation involves Njos' recurring complaint regarding the medical care and treatment which he receives at the Lewisburg Penitentiary. The instant case is but one example of this growing body of litigation brought by Njos.

In this case, Njos has sued the United States, the Federal Bureau of Prison, ten individual prison mental health providers,[4] and four non-medical prison supervisory officials.[5] In his complaint Njos alleges that the defendants violated his constitutional rights, and acted negligently, by not providing him with individual out of cell

---

[3]See e.g., Njos v. Bledsoe, 3:12-CV-243; Njos v. Bledsoe, 3:12-CV-476; Njos v. Thomas, 3:13-CV-2721; Njos v. Thomas, 3:13-CV-2816; Njos v. Thomas, 3:14-CV-766; Njos v. Bureau of Prisons, 3:12-CV-1251; Njos v. Kane, 3:12-CV-1252; Njos v. Carney, 3:12-CV-1375; Njos v. United States, 3:15-CV-1960; Njos v. Thomas, 3:14-CV-875.

[4]These defendants include Dr. Mink, Dr. Contri, Dr. Howson, Dr. Cannon, Dr. Edinger, Clinical Director Pigos, Psychologists Karper, Sage and Ramirez, and Physician Assistant Fasciara.

[5]These defendants include Warden Bledsoe, Warden Ebbert, Regional Director Norwood and Harrell Watts.

psychological care. According to Njos, he is now entitled to select the manner of his care because he claims to have been raped by another inmate at a different institution on October 3, 2010, and, therefore, should be provided individual therapy in a private setting as a result of that incident. Remarkably, Njos persists in this claim even after he acknowledged that he "bec[a]me slightly obsessed with thoughts of torturing, raping or killing uncaring psychology services staff," (Doc. 32., ¶25.), and shared these murderous thoughts with prison psychology staff "question[ing] the psychologists inquiring if it was okay for him to have inappropriate thoughts of killing, torturing and raping staff in revenge for their mistreatment." (Id., ¶29.)

Thus, on the basis of this assertion that the particular locations and types of care he receives are inappropriate, Njos' complaint brings <u>Bivens</u>[6] constitutional torts claims, alleging that his mental health care is so inadequate that it constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States constitution. With respect to these Eighth Amendment claims, we further observe that Njos has previously lodged virtually identical claims against a number of these individual defendants, claims which were dismissed by the district court in April 2013, when the court found that Njos had failed to state a viable Eighth Amendment claims

---

[6]<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

against these defendants. <u>Njos v. United States</u>, et al., Civil No. 3:12-CV-1251, (Doc. 32.). Finally, we also understand Njos to be asserting a medical negligence claim under the Federal Tort Claims Act, 28 U.S.C. §§1346, and 2671-2680.

The defendants have now filed a motion to dismiss, or in the alternative for summary judgment in this case. With respect to this motion, the undisputed facts are as follows: Scott Njos is currently serving an 170-month sentence following his conviction on bank robbery, Hobbs Act robbery, escape, and assault on a federal officer charges. Njos was initially housed at the United States Penitentiary, Victorville, where he quickly amassed 11 disciplinary citations for institutional infractions including attempted escape, assault, possession of hazardous tool, possessing a dangerous weapon and threatening bodily harm. (Doc. 24, ¶¶1-3.)

As a result of this ongoing misconduct Njos was transferred to the United States Penitentiary, Lewisburg, and arrived at that facility on October 18, 2010. (Id., ¶5.) According to Njos, while en route to Lewisburg, he was sexually assaulted by another inmate on October 3, 2010. (Doc. 1.) Upon his arrival at the United States Penitentiary, Lewisburg, Njos began receiving on-going and regular psychological care from prison medical staff, and has been routinely seen by staff on a monthly basis. In addition, Njos has received other care from mental health professionals on an as-

needed basis. (Doc. 24, Ex. 2.) Currently, Njos is a care level I mental health inmate. (Doc. 23, ¶10.)

As a result of these ongoing medical contacts and assessments, prison psychologists have diagnosed Njos as a malingerer who suffers from an anti-social personality disorder, (Id., ¶8), a diagnosis which Njos disputes. Malingering is defined as the intentional production of false or grossly exaggerated physical or psychological symptoms in order to gain some benefit, and is not recognized as a mental illness. (Id., ¶11.) Antisocial personality disorder (ASPD), in turn, is characterized by a pervasive pattern of disregard for, or violation of, the rights of others. Persons who suffer from anti-social personality disorder often violate rules, fail to conform to social norms, avoid responsibilities, engage in impulsive behavior, demonstrate aggressive behaviors. These individuals also may show little remorse, can be deceitful and manipulative of others. (Id., ¶¶12-14.)

The regular, ongoing mental health care that has typically been provided to Njos in cell-side sessions, which is the clinical standard of care typically afforded inmates at the Lewisburg Penitentiary. (Id., ¶37.) In the course of these care sessions, Njos has been counseled on occasion that he must refrain from playing the victim and acting out to garner attention. (Id., ¶¶39-44.) It is the location and venue of this care which now lies at the heart of this lawsuit. The gravamen of Njos' current lawsuit

involves his complaint concerning this cell-side treatment, treatment which is consistent with the general standard of care at the Lewisburg Penitentiary. According to Njos, he has consistently sought individual private therapy session while housed at Lewisburg. Njos further alleges that prison medical staff briefly attempted to afford him this type of private care and counseling in April of 2014, by providing him private counseling in the staff lounge of his cellblock. (Doc. 32, ¶23.) However, even when this private counseling was offered to him Njos reports that he was dissatisfied because "staff officers were approx. 15 feet away within hearing distance." (Id., ¶24.) Njos admits that his dissatisfaction with the arrangements for these private counseling sessions manifested itself in a troubling way when Njos "bec[a]me slightly obsessed with thoughts of torturing, raping or killing uncaring psychology services staff." (Id., ¶25.) Njos shared these murderous thoughts with prison psychology staff and "questioned the psychologists inquiring if it was okay for him to have inappropriate thoughts of killing, torturing and raping staff in revenge for their mistreatment." (Id., ¶29.) Staff then curtailed these private sessions with Njos, who had reported that he was "slightly obsessed" with the idea of killing and raping them, and resumed their cell side care for the plaintiff.

According to Njos this level of care provided by prison psychologists to an inmate who fantasizes about torturing, raping and murdering medical staff violates his

constitutional rights, and constitutes medical negligence because it is inconsistent with regulations promulgated pursuant to the Prison Rape Elimination Act, 42 U.S.C. §15602. These regulations, in part, call upon prisons to "offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual abuse in any prison, jail, lockup, or juvenile facility;" state that "evaluation and treatment of such victims shall include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody" and provide that "[t]he facility shall provide such victims with medical and mental health services consistent with the community level of care," 28 C.F.R. § 115.83.

The defendants have now moved to dismiss this complaint, or in the alternative, seek summary judgment on Njos' claims. (Doc. 13.) This motion is fully briefed by the parties, (Docs. 23, 24, 31, and 32.), and is, therefore, ripe for resolution. For the reasons set forth below, it is recommended that this motion be granted, and the plaintiff's complaint be dismissed.

## II. **Discussion**

### A. **Standard of Review-Motion to Dismiss, or in the Alternative, Summary Judgment**

The defendants have framed this motion as one seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56. When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motions shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. Id.; Garcia v. Newtown Twp., No. 09-CV-3809, 2010 U.S. Dist. LEXIS 20380, 2010 WL 785808, at *3 (E.D. Pa. March 5, 2010). However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Court of Appeals of the Third Circuit has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).

At the outset, a number of the defendants' claims attack the legal sufficiency of the allegations made by the plaintiff in this complaint. To the extent that this motion

makes a facial attack upon the sufficiency of the complaint, we will treat the motion

as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, which provides that a complaint should be dismissed for "failure to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to

this benchmark standard for legal sufficiency of a complaint, the United States Court

of Appeals for the Third Circuit has aptly noted the evolving standards governing

pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have
> seemingly shifted from simple notice pleading to a more heightened form
> of pleading, requiring a plaintiff to plead more than the possibility of
> relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most

favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d

1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald

assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower</u>

Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

[B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In other instances, the defendants invite us to consider matters outside the pleadings when ruling upon this motion. To the extent that we are asked to consider uncontested facts beyond the pleadings we will treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56. Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis

that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the

light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub.</u> <u>Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers</u> <u>Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995). Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v.</u> <u>Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. Of Newark</u> <u>NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v.</u>

Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as

recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.'  477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

Judged against these legal guideposts, for the reasons set forth below it is recommended that this motion to dismiss, or in the alternative, for summary judgment be granted, and Njos' complaint be dismissed.

### B.  <u>Njos' Claims Fails as a Matter of Law</u>

#### 1.  <u>Njos May Not Premise a Claim Upon the Prison Rape Elimination Act Since that Statute Creates No Privately Enforceable Rights or Remedies</u>

At the outset, while the precise tenor of Njos' complaint is not entirely clear, it appears that Njos' claims hang on a fragile three-strand analytical thread.  First, Njos

cites a federal regulation implementing the Prison Rape Elimination Act. 28 C.F.R. §115.83. Second, Njos suggests that this regulation created privately enforceable, mandatory and non-discretionary duties on the part of prison officials to tailor his mental health care in the fashion he deems appropriate. Third, Njos insists that a failure to comply with these regulations violates both the Eighth Amendment to the United States Constitution and the Federal Tort Claims Act.

We disagree. In our view, none of the thin legal strands which comprise Njos' claims cannot withstand legal scrutiny. Indeed, these claims fail for several reasons. First, the premise underlying all of these claims is that the Prison Rape Elimination Act, and its regulations, somehow created a privately enforceable implied right of action in favor of prisoners. This premise is the lynchpin of Njos' entire argument on summary judgment, and this lynchpin legal premise is simply wrong. Contrary to what Njos may believe it is well-settled that: "The Prison Rape Elimination Act 42 U.S.C. §15602 does not give rise to a private cause of action" Miller v. Brown, No. 1:12-CV-01589 LJO, 2014 WL 496919, at *8 (E.D. Cal. Feb. 6, 2014) report and recommendation adopted, No. 1:12-CV-01589 LJO, 2014 WL 806957 (E.D. Cal. Feb. 28, 2014). See e.g., McCloud v. Prack, 55 F. Supp. 3d 478, 480 (W.D.N.Y. 2014); Porter v. Jennings, No. 1:10 CV 01811 AWI, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012); McNaughton v. Arpaio, No. CV 10–1250–PHX–DGC

(LOA), 2010 U.S. Dist. LEXIS 85033, at *6–7 (D.Ariz. July 21, 2010); Law v. Whitson, No. 2:08-CV-0291 SPK, 2009 WL 5029564, at *4 (E.D. Cal. Dec. 15, 2009("It is clear, however, that the Prison Rape Elimination Act does not create a private right of action."); LeMasters v. Fabian, Civil No. 09–702 DSD/AJB, 2009 U.S. Dist. LEXIS 53016, 2009 WL 1405176, at *2 (D.Minn. May 18, 2009); Bell v. County of L.A., No. CV07–8187–GW(E), 2008 U.S. Dist. LEXIS 74763, 2008 WL 4375768, at *6 (C.D. Cal. Aug 25, 2008); Rindahl v. Weber, No. CIV. 08–4041–RHB, 2008 U.S. Dist. LEXIS 105792, 2008 WL 5448232, at *1 (D.S.D.Dec.31, 2008). Therefore, any claims made by Njos that are premised upon the existence of a private right of action derived from the Prison Rape Elimination Act fail as a matter of law.

## 2. Njos' Eighth Amendment Claims Fail as a Matter of Law

Njos also errs when he suggests that an alleged violation of prison regulations equates to a constitutional tort. Quite the contrary, courts recognize that prison regulations do not define the scope of an inmate's constitutional rights. Rather, Njos faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, the plaintiff must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have

-18-

a sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id</u>. "Deliberate indifference" is a subjective standard under <u>Farmer</u>-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

<u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. <u>See</u> <u>Jones v. Beard</u>, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' <u>Id</u>. at 837." <u>Garvey v. Martinez</u>, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional

violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, the plaintiff is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct.

13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth

Amendment violation); <u>Innis v. Wilson</u>, 334 F.App'x 454 (3d Cir. 2009)(same); <u>Rozzelle v. Rossi</u>, 307 F.App'x 640 (3d Cir. 2008)(same); <u>Whooten v. Bussanich</u>, 248 F.App'x 324 (3d Cir. 2007)(same); <u>Ascenzi v. Diaz</u>, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977)).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In a case such as this, where the inmate received on-going medical care, it is also well-established that non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." <u>Durmer v. O'Carroll,</u> 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007).

These guiding principles, which determine the ultimate merits of inmate Eighth Amendment claims, defeat Njos' Eighth Amendment claims both as a legal matter and as a matter of fact. First, given the undisputed facts before the Court, it is apparent

that prison staff have not been deliberately indifferent to Njos' mental health needs. Quite the contrary, staff provide care to Njos even as he dreams of raping and killing them. Thus, staff meet regularly with Njos, counseling him and assessing his needs. Further, staff have on occasions been open to trying to arrange private counseling for Njos. However, when Njos was dissatisfied with this private counseling because "staff officers were approx. 15 feet away within hearing distance," (Id., ¶24), he "bec[a]me slightly obsessed with thoughts of torturing, raping or killing uncaring psychology services staff." (Id., ¶25.) Njos shared these murderous thoughts with prison psychology staff and "questioned the psychologists inquiring if it was okay for him to have inappropriate thoughts of killing, torturing and raping staff in revenge for their mistreatment." (Id., ¶29.) Staff then curtailed these private sessions with Njos, who reported that he was "slightly obsessed" with the idea of killing and raping them, and resumed their cell side care for the plaintiff.

Given this undisputed evidence submitted by the defendants, it appears that much of the plaintiff's argument amounts to little more than a disagreement between a potentially violent inmate, who has threatened to kill and rape his care-givers, and those care-givers over his mental health diagnosis and alternate treatment plans, disputes which, as a matter of law, fail as a constitutional claim. See, e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does

not rise to the level of an Eighth Amendment violation); <u>Innis v. Wilson</u>, 334 F.App'x 454 (3d Cir. 2009)(same); <u>Rozzelle v. Rossi</u>, 307 F.App'x 640 (3d Cir. 2008)(same); <u>Whooten v. Bussanich</u>, 248 F.App'x 324 (3d Cir. 2007)(same); <u>Ascenzi v. Diaz</u>, 247 F.App'x 390 (3d Cir. 2007)(same).

Likewise, Njos has failed to state an Eighth Amendment claim against the non-medical correctional supervisory defendants named in his complaint. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Instead, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal

involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

Here, to the extent that Njos simply names a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Furthermore, the undisputed evidence reveals that Njos was under the constant care of prison medical staff throughout this time. This fact is fatal to any Eighth Amendment claims lodged by Njos against non-medical supervisory prison personnel since: "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004). Therefore, in this case, where it is uncontested that Njos was receiving mental health care, albeit care which he found to be unsatisfactory, non-medical correctional staff may not be held personally liable

under the Eighth Amendment for the nature and level of professional medical care which the plaintiff received. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra. Therefore, to the extent that Njos is endeavoring to bring Eighth Amendment medical deliberate indifference claims against non-medical correctional staff those claims should also be dismissed.

### 3. To the Extent That Njos Seeks to Re-litigate Claims That Were Previously Dismissed, the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters

In addition, Njos' latest complaint appears to attempt to re-litigate matters which has previously been conclusively resolved by the federal courts. Specifically, Njos' latest complaint pursues claims relating to medical deliberate indifference against individual health care providers that were considered, and rejected, by this Court in a prior lawsuit filed by Njos. Njos v. United States, Civil No. 3:12-CV-1251. In that case the Court dismissed Eighth Amendment deliberate indifference claims that Njos brought against his mental health care providers, stating that: "Plaintiff has failed to allege that any of the named defendants (Brown, Pegos, Carpen, Snyder. Metzger, Price, Heath, Thomas, Contrey, Rear, Birdcell and Cannon) were personally involved in his Eighth Amendment denial of medical care, and has failed to assert that any defendant acted with deliberate indifference to his serious mental health issues.

Further, plaintiff has not shown that defendants Mink or Howsen acted with deliberate indifference, as required to properly allege an Eighth Amendment denial of medical care claim." Njos v. United States, Civil No. 3:12-CV-1251, (Doc. 32.) (April 30, 2013).

In conducting an assessment of this aspect of Njos' complaint: "We have the authority to apply the doctrine of claim preclusion or res judicata sua sponte. Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir.2002); Ezekoye v. Ocwen Federal Bank FSB, 179 F.App'x 111, 114 (3d Cir.2006) (non precedential). [and] can . . . invoke res judicata 'if it is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.' Gleash, 308 F.3d at 760." Guider v. Mauer, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009). In our view, review of this, Njos' latest lawsuit, the res judicata, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint relating to the mental health care provided to him by these individual defendants. Collateral estoppel, res judicata and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988).

Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at

328; <u>Blonder-Tongue Labs</u>., 402 U.S. at 331.

<u>Peloro v. United States</u>, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. <u>Dici v. Commonwealth of Pa.</u>, 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. <u>See, e.g.</u>, <u>Peloro v. United States</u>, <u>supra</u>; <u>Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc</u>, <u>supra</u>; <u>Witkowski v. Welch</u>, 173 F.3d 192, 198-205 (3d Cir. 1999); <u>Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.</u>,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims made by Njos in the instant complaint concerning the mental health care he received from individual care-givers, the legal requisites for issue preclusion are fully satisfied, since: " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " <u>Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.</u>, 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting <u>In re Graham</u>, 973 F.2d 1089, 1097 (3d Cir.1992)); <u>see also</u> <u>Parklane Hosiery</u>

Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). Therefore, these claims should be dismissed as well.

### 4. Njos' Federal Tort Claim Acts Claims Also Fail as a Matter of Law

In addition, Njos' Federal Tort Claims Act medical negligence claims fail as a matter of law. To state a valid cause of action under the FTCA, such a claim must comport with the state laws of the state in which the alleged tortious conduct occurred, in this case the state tort laws of Pennsylvania. 28 U.S.C. § 1346(b); see Gould Elec., Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000)(citing § 1346(b)). Construing this case under settled Pennsylvania tort law, in order to establish a cause of action for negligence, Njos must prove the following elements: (1) a duty or obligation to the plaintiff recognized by law; (2) a breach of that duty to the plaintiff; (3) a causal connection between the conduct and plaintiff's resulting injury; and (4) actual damages suffered by the plaintiff. Pittsburgh Nat'l Bank v. Perr, 431 Pa.Super. 580, 637 A.2d 334, 336 (Pa.Super.Ct.1994). See Stamper-Murray v. U.D.H. Mgmt. Corp., No. 1:14-CV-1360, 2015 WL 3840937, at *2 (M.D. Pa. June 22, 2015). "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." Martin v. Evans, 551 Pa. 496, 711 A.2d 458, 461 (Pa.1998).

In order to present a *prima facie* case of medical negligence under Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." <u>Simpson v. Bureau of Prisons</u>, No. 02-2213, 2005 WL 2387631, at *5 (M.D.Pa. Sept. 28, 2005) This requirement is imposed upon malpractice plaintiffs by Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along with any malpractice claim or medical negligence claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals

for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania will apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. Liggon-Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir.2007); Ramos v. Quien, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008); Stroud v. Abington Memorial Hosp., 546 F.Supp.2d 238, 248 (E.D.Pa.2008) (noting that Pennsylvania federal courts "have uniformly held that the COM requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court"). Thus, to the extent that the plaintiff wishes to bring a medical malpractice action, a failure to comply with Rule 1042.3 is a bar to this claim. In this regard, the controlling legal standards can be simply stated:

Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard." ' Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla,

345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedford Mem'l Hosp.., 328 F.Supp.2d 549 (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file a required certificate of merit. See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law pursuant to the Federal Tort Claims Act. See Hodge v. Dept. of Justice, 372 Fed. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839, 2009 WL 1770146 (M.D. Pa. June 22, 2009). Therefore, the plaintiff's status as a *pro se* litigant cannot excuse him from compliance with the substantive state law when bringing this state law claim of medical malpractice. Id.

Njos seems to acknowledge these controlling tenets of Pennsylvania law, but nonetheless tries to avoid the implications of his violation of Rule 1042.3 by arguing that his claim is not one of professional negligence but rather is a simple negligence

claim which requires no expert elucidation. This argument is entirely unpersuasive.

The lynchpin of Njos' medical negligence claim is that the treatment afforded to him

by prison psychologists fell below what was called for by the regulations promulgated

pursuant to the Prison Rape Elimination Act 42 U.S.C. §15602. These regulations, in

part, provide that "[t]he facility shall provide such victims with medical and mental

health services consistent with the community level of care," 28 C.F.R. § 115.83. By

claiming that he is entitled to care consistent with "the community level of care", 28

C.F.R. § 115.83, Njos is plainly bringing a lawsuit "based upon an allegation that a

licensed professionals deviated from an acceptable professional standard." Pa.R.C.P.

No. 1042.3. His medical negligence claim, therefore, falls squarely within the

provisions of Rule 1042.3, and Njos' failure to comply with that rule is fatal to this

particular claim.

Nor can Njos satisfy this requirement by filing a document which recites in a

talismanic fashion that it is a certificate of merit and then simply recites the text of

Rule 1042.3. A certificate of merit must affirmatively demonstrate "either that (1) an

appropriate licensed professional has supplied a written statement that there exists a

reasonable probability that the care, skill or knowledge exercised or exhibited in the

treatment, practice or work that is the subject of the complaint, fell outside acceptable

professional standards and that such conduct was a cause in bringing about the harm,

or ... (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Bresnahan v. Schenker, 498 F. Supp. 2d 758, 761-62 (E.D. Pa. 2007). Therefore, where a purported certificate of merit merely recites that the plaintiff possesses knowledge of his case, that filing does not comply with Rule 1042.3, and the plaintiff's medical negligence claim may be subject to dismissal. Id. Similarly, a plaintiff may not satisfy Rule 1042.3 by merely acknowledging the requirement of the rule and promising to comply at some future time. Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010). Furthermore, a pleading which simply parrots the language of Rule 1042.3 without any further substantive content is inadequate, and cannot save a malpractice claim from dismissal. Rodriguez v. Smith, CIV.A.03-3675, 2005 WL 1484591 (E.D. Pa. June 21, 2005)(dismissal without prejudice where plaintiff files certificate that parrots Rule 1042.3 and concedes in the certificate that a licensed professional has not yet supplied the written statement required under Rule 1042.3(a)(1)).

Given the substantive nature of this requirement under Pennsylvania law, its clear application to this medical negligence claim, and Njos' current failure to fully comply with the rule, it is recommended that this medical negligence claim be dismissed. In this motion to dismiss, the defendant invites us to dismiss this claim,

and to do so with prejudice.  While we agree that Rule 1042.3 compels dismissal of this claim at present, we will decline to recommend a dismissal with prejudice at this juncture.  Although the plaintiff's failure to comply with Rule 1042.3 requires dismissal of this malpractice claim, we note that the sanction imposed under state law for a violation of this rule, entry of a non pros by the prothonotary, has no precise analogue in the federal system.  Thus, courts have held in this context that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D. Pa. 2007)(quoting, Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 511 (E.D. Pa. 2004).  Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3, by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for then earlier non-compliance.  See Womer v. Hilliker, 208 A.2d 269 (2006), see also Pa.R.C.P. No. 3051.  Therefore, "[w]hen a plaintiff has failed to submit a certificate or merit or otherwise indicated that he has retained an expert witness, it is appropriate for a federal district court to dismiss his professional malpractice claim without prejudice.  See Lopez v. Brady, Civil No. 4:CV-07-1126, 2008 WL 4415585, at *14 (M.D.Pa. Sept.25, 2008) (dismissing FTCA medical malpractice claim without

prejudice); Henderson v. Pollack, Civil No. 1:CV-07-1365, 2008 WL 282372, at \*5 (M.D.Pa. Jan.31, 2008) (dismissing state law medical malpractice claim); Hartman v. Low Sec. Correctional Ins. Allenwood, No. 4:CV-04-0209, 2005 WL 1259950, at \*5 (M.D.Pa. May 27, 2005) (same)." Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010). Thus, Njos may still have recourse to the courts on this claim, if he can file a proper certificate of merit and "demonstrate a reasonable explanation or legitimate excuse for untimely filing." Ramos v. Quien, 631 F. Supp. 2d 601, 612 (E.D. Pa. 2008). However, until Njos takes these steps, and complies with Rule 1042.3, we should dismiss this state tort medical negligence claim.

### 5.    The Defendants Are Entitled to Qualified Immunity

Finally, even if Njos had stated a colorable claim, the defendants would still be entitled to qualified immunity from these claims for damages. Njos' complaint presents a striking claim. In essence, Njos insists that the failure of psychologists to meet with him privately violated his constitutional rights, even after Njos told staff that he was fantasizing about raping, torturing and murdering them.

In order to establish a civil rights claim Njos must show the deprivation of a right secured by the United States Constitution or the laws of the United States.

Satisfying these elements alone, however, does not guarantee that Njos is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the

defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. <u>Saucier</u>, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. <u>Pearson</u>, 555 U.S. at 232; <u>Saucier</u>, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

Here, Njos asks us to embrace a novel idea, the notion that prison medical staff must meet privately with an inmate outside the presence of correctional staff at his request, even after that inmate has acknowledged that he had "become slightly

obsessed with thoughts of torturing, raping or killing uncaring psychology services staff." (Doc. 32., ¶25.) No clearly established tenet of constitutional law requires prison health care providers to agree to meet privately in a less secure setting with a man who dreams of raping and killing them. Since nothing in the measured and restrained conduct of these medical professionals could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known," Wilson v. Layne, 526 U.S. 603, 609 (1999), these officials should be entitled to qualified immunity from damages in this case.

### 6. The Pendent Tort Claim of Intentional Infliction of Emotional Distress Also Fails

Finally, Njos has included in this lawsuit what we understand to be a pendent state law tort claim of intentional infliction of emotional distress. In our view this claim fails for at least two reasons.

First, we note that this proposed disposition of the plaintiff's primary legal claims suggests the appropriate course for the Court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against these defendants. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the

proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White  No. 05-2150, 2007 WL 3033865, *13 (M.D.Pa. Oct. 15, 2007)(Caputo, J.)(adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008)("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains.  In addition, the district court did not abuse its discretion in declining to address the state law negligence claims.  28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).")

Here, we have found that Njos' federal claims are subject to dismissal. Therefore, in the exercise of our discretion, we should decline to assert supplemental jurisdiction over potential ancillary state law claims in this case where all potential federal claims brought before us have failed as a matter of law.

In any event, we also conclude that this intentional tort claim fails on its merits. With respect to claims for intentional infliction of emotional distress, Pennsylvania law requires that a plaintiff plead and prove the following four essential elements: (1) the conduct was extreme and outrageous; (2) the conduct was intentional; (3) the conduct caused emotional distress; and (4) the distress was severe. Silver v. Mendel, 894 F.2d 598, 606 n. 16 (3d Cir.1990). Ultimately, in order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that a defendant's conduct exceeded the bounds of decency and is intolerable under prevailing societal norms. Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super.Ct.2005); see also Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir.1988); Kearney v. JPC Equestrian, Inc., No. 3:11-CV-01419, 2012 WL 1020276, at *7 (M.D. Pa. Jan. 4, 2012) report and recommendation adopted, No. 3:11-CV-01419, 2012 WL 1020266 (M.D. Pa. Mar. 26, 2012). This is an exacting legal standard and one which Njos plainly has not met. In this case, it simply cannot be said that the conduct of the defendants, who have declined to provide private counseling in the location of Njos' choosing to an inmate who openly fantasizes about killing them, exceeds the bounds of decency and is intolerable under prevailing societal norms. Quite the contrary, it is Njos' threatening conduct which is more readily recognized as the type of outrageous behavior which would support a tort claim of intentional infliction of emotional distress. See Lane v.

Cole, 88 F. Supp. 2d 402 (E.D. Pa. 2000)(threat of violence inflicts emotional distress). Therefore, this intentional tort claim–where the facts tend to show that Njos was the victimizer and not the victim–fails on its merits.

## III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss, or in the alternative, for summary judgment (Doc. 13.) be GRANTED, and the plaintiff's complaint be DISMISSED.[7]

_____

[7]We note that while this motion has been pending Njos also filed a document styled as an amended complaint. (Doc. 27.) We regard this pleading essentially as a nullity since Njos has not sought leave of court to amend his pleadings, and has not complied with the requirements of Local Rule 15.1 with respect to this proposed amendment. In any event we note that the primary allegation that Njos appears to attempt to articulate in this pleading is a Federal Tort Claims Act claim. This FTCA claim fails for the reasons we have noted in this Report and Recommendation, and also provides no basis for personal liability by the individual defendants named in this case, who must be dismissed from any FTCA claim. Due to the exclusive nature of the remedy available under the FTCA, and its jurisdictional prerequisites, a court may not entertain a civil suit for a claim cognizable under 28 U.S.C. § 1346(b) against "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1); see also Meyer, 510 U.S. at 476. As the United States Court of Appeals recently observed in affirming the dismissal of individual defendants from an inmate FTCA action: "The only proper defendant in an FTCA suit is the United States itself. See 28 U.S.C. § 2671 et seq. The FTCA waives the United States' sovereign immunity for claims arising out of torts committed by federal employees 'under circumstances where ... a private person ... would be liable' under applicable state tort law. See 28 U.S.C. § 1346(b)(1)." Feaster v. Federal Bureau of Prisons, 366 F. App'x 322, 323 (3d Cir. 2010). Therefore, when inmates bring actions against individual government officers for negligence under the FTCA the proper course to follow is to dismiss the individual defendants. Id.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of September 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

_____

Further , any individual liability claims propounded by Njos still founder on the legal obstacles outlined in this Report and Recommendation. Therefore, nothing in this proffered amendment would cure the legal defects we have noted in Njos' claims. Accordingly, since these claims all fail as a matter of law the proffered amendment is futile. Given that this proposed amendment would be futile, this court should decline to entertain any amended complaint. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)