# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SCOTT NJOS,** | CIVIL NO. 3:14-CV-1960 |
| **Plaintiff,** | (Judge Kane) |
| v. | |
| | (Magistrate Judge Carlson) |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case.

#### A. Procedural Background

Scott Njos is a federal inmate who was formerly housed at the United States Penitentiary, Lewisburg,[1] where he was serving a lengthy sentence following his conviction for a host of violent crimes, including bank robbery, Hobbs Act robbery, escape, and assault on a federal officer charges. While in federal custody, Njos has amassed an extensive disciplinary history, having been cited on dozens of occasions with prison rules infractions, many of which also involved violent or disruptive behavior by Njos in an institutional setting. This history of recidivism and on-going institutional misconduct led to the reassignment of Njos to the Special Management Unit of the United States Penitentiary, Lewisburg.

---

[1]After filing this complaint Njos was transferred to the United States Penitentiary Florence ADMAX, the nation's highest security federal prison.

Njos is also a prolific litigator in federal court.[2] Much of this litigation involves Njos' recurring complaints regarding the medical care and treatment which he receives at the Lewisburg Penitentiary. The instant case is but one example of this growing body of litigation brought by Njos. In this case, Njos has filed an amended complaint, which is currently the operative pleading in this lawsuit. (Doc. 85.) This amended complaint asserts a claim under the Federal Tort Claims Act, 28 U.S.C. §§1346, and 2671-2680, (FTCA) alleging that the United States acted negligently in treating an anal fissure which he experienced in 2010 and by not providing him with individual out of cell psychological care. According to Njos, this negligence stems from an incident at a different institution in which he alleges that he was raped by another inmate on October 3, 2010. Njos alleges that the physical and emotional care he has received in the wake of this alleged incident was negligent and inadequate. In particular, according to Njos he should be provided individual therapy in a private setting as a result of that incident. Njos persists in this assertion that he is entitled to such private therapy, even though the evidence also suggests that profound security consideration militated against private meetings between Njos and mental health professionals at Lewisburg.

---

[2]See e.g., Njos v. Bledsoe, 3:12-CV-243; Njos v. Bledsoe, 3:12-CV-476; Njos v. Thomas, 3:13-CV-2721; Njos v. Thomas, 3:13-CV-2816; Njos v. Thomas, 3:14-CV-766; Njos v. Bureau of Prisons, 3:12-CV-1251; Njos v. Kane, 3:12-CV-1252; Njos v. Carney, 3:12-CV-1375; Njos v. United States, 3:15-CV-1960; Njos v. Thomas, 3:14-CV-875.

Specifically, Njos has reportedly told these care givers that he fantasizes about raping, assaulting and killing them in a private contact setting.

Njos previously filed a battery of motions for summary judgment, (Docs. 34, 43, and 46), arguing that he was entitled as a matter of law to judgment in his favor on these tort claims. We recommended that these motions be denied, noting that a plethora of disputed material facts precluded summary judgment in favor of Njos on these claims. (Doc. 57.) The district court adopted this recommendation, (Doc. 77), but undeterred Njos has filed another motion for summary judgment, renewing his argument that the uncontested evidence plainly shows that he is entitled to judgment as a matter of law on his negligence claims under the FTCA. (Doc. 107.)

For its part, the United States has responded to this motion, and has also filed its own motion to dismiss, or in the alternative, for summary judgment. (Doc. 101.) In these filings, the Government asserts that it is Njos' claims that fail as a matter of law, and further contends that, at a minimum, disputed factual issues compel the denial of Njos' motion for summary judgment.

With respect to the legal defenses which the Government raises in its motion to dismiss, or in the alternative, for summary judgment, and then repeats in its response to Njos' summary judgment motion, we will address those legal claims and issues through a separate Report and Recommendation which will discuss the pending defense motion. For today's purposes, addressing Njos' summary judgment motion in

isolation, (Doc. 107), suffice it to say that at nothing has changed since the last time this court denied similar motions filed by Njos: Simply put, as a threshold matter a vast array of disputed factual matters still precludes summary judgment in favor of Njos on this FTCA negligence claim. These factual matters are discussed briefly below:

### B. Factual Background Regarding Health Care Provided to Njos

Viewing the evidence in the light most favorable to the defendant, as we are required to do when considering a motion for summary judgment filed by a plaintiff in an FTCA negligence action, we find that the following facts are fully supported by evidence offered by the defendant in opposition to this summary judgment motion (Doc. 114):

#### 1. Medical Care for Rectal Disorders

Turning first to Njos' medical complaints relating to an anal fissure he alleged that he experienced, Njos' medical records include a claim by him that he was raped by another inmate at some other federal facility on October 4, 2010. The clinical record reveals some evidence that Njos suffered from an anal fissure or tear in October of 2010.

While Njos does not allege, and the evidence does not indicate, that the injury was suffered at the United States Penitentiary, Lewisburg, there is substantial evidence that Njos has received on-going medical care and treatment for any lingering effects of this injury after he was transferred to Lewisburg and while he was housed at the

Lewisburg Penitentiary. Thus, on July 12, 2012, Njos was provided with Witch Hazel to use with the TUCKS medicated pads. On August 23, 2012, Njos was provided with Witch Hazel to use with the TUCKS medicated pads, again listing the anal fissure as the reason for this treatment. This care continued throughout 2012. Thus, on October 29, 2012 and December 20, 2012, Njos was provided with Hydrocortisone Suppositories, listing the anal fissure as the indication for this care.

The following year, 2013, prison medical staff continued to periodically treat this medical condition. For example, on February 8, 2013, Njos was again provided with Hydrocortisone Suppositories; on February 12, 2013, Njos was provided with Witch Hazel to use with the TUCKS medicated pads; and on March 26, 2013, Njos was again provided Hydrocortisone Suppositories.

Njos continued to receive rectal medical care and assistance throughout 2014. On January 6, 2014, Njos was provided with Witch Hazel to use with the TUCKS medicated pads, and on January 9, 2014, Njos was again provided Hydrocortisone cream, listing the anal fissure as the indication. On May 21, 2014, Njos was once again provided Hydrocortisone cream, listing the anal fissure as the indication for this medication.

On September 10, 2014, Njos requested a renewal of the TUCKS medicated pads referencing the anal fissure as the indication. However, by September 10, 2014, medical records indicated Njos' anal fissure, which dated back to 2010, was resolved.

During Njos' September 10, 2014 medical visit, it was also noted that Njos has a history of trying to get medication that he does not need.

Despite these medical notations indicating that Njos' condition had improved, he still continued to receive periodic care and treatment for rectal concerns. Thus, on January 12, 2015, Njos was provided with a renewal of Witch Hazel to use with the TUCKS medicated pads. On February 18, 2015, Njos was seen for what was described as a chronic care encounter. During this February 18, 2015 visit with health services, Njos complained of constipation and irritation at his anus with episodic blood on the tissue. In the course of the February 18, 2015 visit with health services, it was noted that there was a small, very superficial 7-7 mm fissure at the 2 o'clock position from the anal verge, noting it was not inflamed and no evidence of fissure. More significantly, it was noted during the February 18, 2015 visit with health services that the superficial 7-7 mm fissure appeared to be a result of a previously inflamed external hemorrhoid which was resolving itself. Having determined that Njos now likely suffered from anal fissure due to hemorrhoids, during this February 18, 2015 medical visit Njos was provided Hydrocortisone cream. On June 29, 2015, Njos was provided with Witch Hazel to use with the TUCKS medicated pads.

Several months later, during a visit with health services on October 29, 2015, Njos requested suppositories. At that time it was noted that the only medical finding was evidence of a prior fissure; therefore, the provider requested an evaluation by

colonoscopy. On April 13, 2016, Njos was provided a medication refill which included Witch Hazel. On May 16, 2016, Njos underwent a colonoscopy which revealed minimal internal hemorrhoids, and otherwise disclosed a completely normal colon. The colonoscopy completed on Njos on May 16, 2016 further showed that there was no anal fissure or external hemorrhoids present.

Finally, the evidence concerning Njos' current physical condition indicates that the type of hemorrhoids noted as present in the report are not a result of penetration trauma, but rather are consistent with chronic constipation, a medical complaint previously voiced by Njos and treated by staff.

### 2. **Mental Health Care**

While Njos has alleged that he suffers from an array of psychological conditions, this fact is disputed by the defendants who have classified Njos as a mental health care level one inmate which means he has the least amount of need for mental health services. Accordingly, the Bureau of Prisons has provided Njos with care commensurate with this classification and consistent with the community standards of care at the Lewisburg Penitentiary.

Thus, following this alleged assault in the Fall of 2010, Njos was evaluated by Psychology Services at USP Victorville on October 4, 2010 . At Njos' request, on December 23, 2010 he was evaluated by Psychology Services at USP Lewisburg after claiming he was experiencing mental health symptoms related to past sexual assaults.

Njos was then seen by Psychology Services fifty-five (55) times between the December 23, 2010 evaluation and March 6, 2013, the first documented contact where Njos mentioned physical and mental health difficulty related to the alleged October 2010 sexual assault. Since March 6, 2013, Njos has been evaluated by Psychology Services on a consistent basis and it has been determined by medical staff that he does not have further treatment needs.

The evidence also reveals that Njos presents an array of challenges to his caregivers. In particular, Njos has expressed having thoughts of torturing, raping, and killing various psychology staff members. Njos' criminal and anti-social behaviors have been a pattern for him dating back many years which contributed to his becoming incarcerated and receiving repeated incident reports for misbehavior/violating the inmate code of conduct. In the view of prison mental health care providers Njos' misconduct and mind set is attributable to bad choices and a disregard for authority as it relates to his diagnosis of Antisocial Personality Disorder.

Njos has been evaluated on numerous occasions during the course of his incarceration by Psychology Services. In these evaluations, primarily Njos has been diagnosed by these staff with malingering, which is "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentive" and Antisocial Personality Disorder. Throughout his contacts with various departments within Lewisburg there was marked discrepancy between Njos' claimed

level of stress and disability from mental health concerns and any objective findings or observations from Psychology Services, Correctional Services, or Health Services which would support Njos' subjective complaints. This marked discrepancy between Njos' subjective complaints and the objective evidence has for medical staff further bolstered a conclusion of malingering on Njos' part. At a minimum, this discrepancy creates a material factual dispute concerning whether Njos is profoundly emotionally impaired or a manipulative malingerer.

Furthermore, when Njos voiced concerns about these emotional issues, staff have endeavored to address theses concerns. For example, during a suicide risk assessment dated December 9, 2014, Njos reported that another inmate on his range was verbally harassing him regarding incidents that occurred in another institution. Njos was directed as to the appropriate action of utilizing the unit team to determine if a movement of cells was warranted and provided appropriate healthy coping strategies and interventions from Psychology Services. Njos' December 9, 2014 assessment by psychology services was also forwarded to the unit team upon completion.

Finally, during his incarceration at Lewisburg Njos had not been diagnosed by any Federal BOP Psychology Department with any anxiety related disorder. (Ex. 1 ¶ 12.) Instead, the only reference to anxiety disorders in the documented records, appears to be a notation that Njos was diagnosed with Anxiety State, unspecified by Health

Services staff at USP Lewisburg on March 29, 2011 and this diagnosis was resolved on November 4, 2013.

It is against the backdrop of this evidence, amassed by the defendant, concerning the care and treatment afforded to Njos that the plaintiff now argues that he has proven his FTCA negligence claim as a matter of law. We disagree. For the reasons set forth below, it is recommended that the plaintiff's latest summary judgment motions be denied.

## II. Discussion

### A. Summary Judgment - Rule 56, Standard of Review

Federal courts are permitted to summarily adjudicate an action in order to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a jury trial would therefore "be an empty and unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS 134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010). Rule 56 specifically provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56. The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most

favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Finally, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is through this analytical lens that we now assess the plaintiff's latest motion for summary judgment.

### B. Njos' Latest Summary Judgment Motion Should Be Denied.

In this case our review of the plaintiff's summary judgment motions leads us to conclude that this inmate has not made the demanding showing required by Rule 56 for a summary judgment in his favor.

Simply put, Njos has not demonstrated that he is entitled to judgment in his favor as a matter of law in his favor on any Federal Tort Claims Act negligence claims. To state a valid cause of action under the FTCA, such a claim must comport with the state laws of the state in which the alleged tortious conduct occurred, in this case the state tort laws of Pennsylvania. 28 U.S.C. § 1346(b); see Gould Elec., Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000)(citing § 1346(b)). Construing this case under settled Pennsylvania tort law, in order to establish a cause of action for negligence, Njos must prove the following elements: (1) a duty or obligation to the plaintiff recognized by law; (2) a breach of that duty to the plaintiff; (3) a causal connection

between the conduct and plaintiff's resulting injury; and (4) actual damages suffered by the plaintiff. Pittsburgh Nat'l Bank v. Perr, 431 Pa.Super. 580, 637 A.2d 334, 336 (Pa.Super.Ct.1994). See Stamper-Murray v. U.D.H. Mgmt. Corp., No. 1:14-CV-1360, 2015 WL 3840937, at *2 (M.D. Pa. June 22, 2015). "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." Martin v. Evans, 551 Pa. 496, 711 A.2d 458, 461 (Pa.1998). As the plaintiff, Njos ultimately bears the burden of providing by a preponderance of the evidence that the United States' acts or omissions deviated from the general standard of care under the circumstances, and that the deviation proximately caused the harm. Id.

Moreover, as we have noted in the past when addressing questions of negligence, there is a compelling factual component to these issues and "[o]nly in exceptional cases will questions of negligence [and] contributory negligence ... pass from the realm of fact to one of law." Doland v. Berrios, No. 1:11-CV-01783, 2014 WL 3809962, at *7 (M.D. Pa. Aug. 1, 2014)(citations omitted). Moreover, where an FTCA negligence claim involves resolution of disputed, material issues of fact it is well-settled that summary judgment is inappropriate. See Moyer Packing Co. v. United States, 567 F.Supp.2d 737, 761 (E.D.Pa.2008). Such factually contested claims cannot be resolved as a matter of law, through summary judgment. Rather, they must be

determined as a matter of fact, through trial. Gray v. United States, No. 1:CV-10-1772, 2014 WL 900967, at *6 (M.D. Pa. Mar. 7, 2014).

In sum, in our view, none of the claims made by Njos in his summary judgment motion are amenable to resolution in Njos' favor as a matter of law. While we will determine whether these claims may fail as a matter of law when we consider the defendant's summary judgment motion, at present, suffice it to say that Njos has not demonstrated that he is entitled to a judgment in his favor as a matter of law. Njos' summary judgment motion fails as a threshold matter for a simple reason. When the evidence is construed, as it must be, in a light most favorable to the defendant, at a minimum numerous factual disputes supported from the defense perspective by substantial, albeit contested, evidence bar any summary judgment resolution of this case. Therefore, the plaintiff's latest motion for summary judgment, (Doc. 107)– like his prior motions– should be denied. The related question, raised by the defendant in its motion to dismiss or in the alternative for summary judgment, (Doc. 101) regarding whether Njos' claims fail as a matter of law will be addressed by this court at a later date through a separate Report and Recommendation which addresses that motion.

### III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's Motion for Summary Judgment, (Doc. 107), be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of May, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge